Raj D. Roy, Esq. (183726)
*roylegalgroup@gmail.com*
Frank P. Agello, Esq. (204471)
*roylegalgroup@gmail.com*
ROY LEGAL GROUP
8345 Reseda Boulevard, Suite 222
Northridge, California 91324
Telephone: (818) 993-3300
Facsimile: (818) 993-4577

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNA

### EASTERN DIVISION

| | |
|---|---|
| KALAJ, INC., a California Corporation; and N&C TRUCKING, INC., a California Corporation;<br><br>        Plaintiffs,<br><br>                vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware Corporation; and DOES 1 to 100, Inclusive,<br><br>        Defendants. | CASE NO.: **5:17-cv-02060-JLS-KK**<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES:<br><br>1. BREACH OF CONTRACT<br>2. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING<br>3. INTENTIONAL INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE;<br>4. NEGLIGENT INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE;<br>5. NEGLIGENT HIRING, RETENTION AND SUPERVISION<br>6. RESCISSION OF CONTRACT BASED ON ECONOMIC DURESS |

ROY LEGAL GROUP

Attorneys at Law

## OVERVIEW OF COMPLAINT

Plaintiffs, Linehaul Ground Contractors for Defendant FEDEX, employing dozens of drivers and trucks to haul packages, allege their contracts were wrongfully and by pretext terminated in retaliation for complaining about conditions at the Rialto terminal in Bloomington, California, and because of the unwarranted enmity of yard manager, Martin Daza. Further, Plaintiffs' allege they were forced to sell their valuable lines under duress and Defendant prevented them from selling them to another contractor who would have paid substantially more money for them, causing them further economic damage.

## STATEMENT OF JURISDICTION

1. The District Court has subject matter jurisdiction since: (1) complete diversity exists, and (2) the amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of $75,000. 28 U.C. Section 1332(a); See also, *Singer v. State Farm Mut. Auto Insurance Co*., 116 F.3d 373, 376 (9th Cir. 1997).

2. Complete diversity of Citizenship exists because at the time of filing of the action, and at all time herein, Plaintiffs are citizens of California, while Defendant FEDEX Ground is and at the time of the filing of this action was, a citizen of both Delaware, its place of incorporation, and Pennsylvania, its principal place of business.

ROY LEGAL GROUP

Attorneys at Law

FIRST AMENDED COMPLAINT FOR DAMAGES

3. The amount in controversy exceeds the Jurisdictional Minimum of $75,000.

## **PARTIES**

4. Plaintiff KALAJ, INC. ("Plaintiff KALAJ, INC.") is a Corporation incorporated and duly authorized to do business in the State of California, with principal executive office and business office located at 31684 Paseo Goleta, Temecula, CA 92592.

5. Plaintiff N&C TRUCKING, INC. ("Plaintiff NCT") is a Corporation incorporated and duly authorized to do business in the State of California, with a Principal Place of Business, principal executive office and business office located at 31684 Paseo Goleta, Temecula, CA 92592.   Plaintiffs KALAJ, INC. and NCT are hereinafter collectively referred to as "Plaintiffs".

6. Defendant FEDEX GROUND PACKAGE SYSEM, INC. ("Defendant FEDEX") is a Foreign Corporation, organized in Delaware and duly authorized to conduct business and conducting business in the State of California, with principal place of business and executive office at 1000 FEDEX Drive, Moon Township, Pennsylvania, 15108, and principal business office in California at 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.

7. Plaintiffs are informed and believes, and thereon allege, that the Defendants named herein as DOES, 1 to 100, Inclusive, are in some way

ROY LEGAL GROUP

Attorneys at Law

3

FIRST AMENDED COMPLAINT FOR DAMAGES

responsible for Plaintiffs' damages as stated herein.  Plaintiffs are currently unaware of the names and capacities of these DOE Defendants, but will amend this complaint to assert the true names and capacities of the DOE Defendants when the same has been ascertained.

8. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, the DOE Defendants were and now the agents, servants, employees, representatives and/or alter egos of each of the remaining Defendants and, in doing the things hereinafter mentioned, were acting in the course and scope of their authority as such agent, servant, employee and/or representative with the permission and consent of the remaining Defendants.

## FACTUAL BACKGROUND

9. In 1994, Plaintiffs' owner, Nick Kalaj, (hereinafter, "Mr. Kalaj"), began his relationship with Defendant FEDEX when he worked at the company as a truck driver.  After a few years, Mr. Kalaj invested his life savings into becoming a linehaul contractor of Defendant FEDEX. On March 4, 1996, Mr. Kalaj executed a Linehaul Contractor Operating Agreement with Defendant FEDEX (then "Roadway Package System, Inc."). Attached as Exhibit 1, is a true and correct copy of the Operating Agreement.

10. Having obtained success in this venture, and encouraged by defendant managers to expand and promised by them that they would give him "as much

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

business as he could handle," Mr. Kalaj began purchasing more trucks and began hiring his own drivers in anticipation of having a long and successful relationship with them.

11. Mr. Kalaj incorporated Plaintiff NCT in 2006, and began transporting packages for defendant with these new trucks and drivers. On information and belief, NCT was assigned the previous linehaul contract with FEDEX executed by its owner, Mr. Kalaj.

12. In 2014, Mr. Kalaj further expanded his ground transportation business by incorporating Plaintiff KALAJ, INC., which executed a Linehaul Contractor Operating Agreement with Defendant.   This Operating Agreement-KALAJ, INC was amended to include addendums on August 21, 2015. Attached as Exhibit 2, is a true and correct copy of the amendment/addendums.

13. Said Operating Agreements compensated Plaintiffs for transporting FEDEX packages across the 48 contiguous United States.   Typically, this was accomplished by his team picking up pre-loaded trailers at  defendant FEDEX'S Rialto terminal. Further packages were transported by Plaintiffs when they received other pre-loaded trailers at their destination locations, which in turn they returned to Rialto. Each of Plaintiffs' big rigs prominently displayed the FEDEX logo and the trucks could only be used in service of Defendant.

FIRST AMENDED COMPLAINT FOR DAMAGES

14.   The Operating Agreement further compensated contractors with additional revenue during "peak season," which ran from October through December, each year.  This additional revenue paid contractors extra money per mile as an incentive to deliver more packages during the holiday season.  Peak season money was an important factor in determining the amount of annual profits for Plaintiffs.

15. Importantly, the Linehaul contracts renewed automatically at the end of each contract period, unless the one party gave written notice of its termination 30 days prior to its expiration.  Each of the contracts entered into by Mr. Kalaj personally and with his Plaintiff corporations renewed automatically such that Mr. Kalaj had been in a contractual relationship with defendant to haul packages for more than 20 years under the original contracts, save for the 2015 addendums. Indeed, given the assurances by defendant managers that work would always be readily available, Mr. Kalaj greatly expanded his operations at considerable expense in anticipation of a further and longer lasting relationship with defendant FEDEX.

16. FEDEX contractors, like Plaintiffs, purchased specific dedicated routes to transport packages that were exclusive to them. Additionally, defendant FEDEX employed a bonus point system, based on performance, which awarded other dedicated routes to the contractors or allowed them the opportunity to purchase

ROY LEGAL GROUP

Attorneys at Law

dedicated lines. These dedicated lines were valuable to the contractors and were regularly bought and sold by contractors amongst themselves or others with FEDEX approval, which, by contract, could not be reasonably denied.

17. Each time, Plaintiffs did not negotiate any of the terms of the Operating Agreements. The form Operating Agreements were provided to Plaintiffs' owner, Mr. Kalaj, an Albanian immigrant with no college education, by Defendant FEDEX. On information and belief, the form Operating Agreements were prepared by Defendant FEDEX' attorneys, employees, and/or agents.

18. Prior to the wrongful termination of the Operating Agreements, Plaintiff KALAJ, INC. had six (6) big rig trucks to service its routes while Plaintiff NCT had seventeen (17) trucks. The monthly finance payment on Plaintiffs' trucks exceeded $46,000 per month. Plaintiffs regularly employed fifty-two (52) drivers in their combined fleet.

19. By 2015, the combined revenue of the two Plaintiff corporations exceeded $6,000,000, and with a 20% profit margin, their net revenue was $1,200,000, annually.

20. The Operating Agreements has several sections vital to Plaintiffs' claims. Section 1.14, number 15 states that when the Contractor's offense is "Falsifying any safety-related report or document," if the Contractor has two or more trucks and one or more drivers: "First offense, driver disqualified; Second

ROY LEGAL GROUP

Attorneys at Law

offense in 12 months, driver disqualified, indemnity terminated; Third offense in 12 months, contract termination."

21. Section 1.14, number 18 states that when the Contractor's offense is "Failure to maintain hours of service records in accordance with DOT regulations in any 12 consecutive months," if the Contractor has three or more trucks and one or more drivers: "Fourth offense, indemnity terminated; Fifth offense in 12 months, contract termination."

22. Section 1.14 of the Operating Agreements further granted Defendant FEDEX discretion to "suspend the Contractor or driver" pending the filing of charges *only*: (1) with respect to acts or omissions specified in said Section (involving safety obligations) that would constitute an offense of law and a ground for termination or disqualification; (2) after reasonable inquiry; and (3) upon preliminary determination of the probability that the Contractor or driver is guilty of the offense charged. These were not complied with by FEDEX and Plaintiffs were not aware or informed about previous offenses or charges prior to their termination.

23. Section 9.1 of the Operating Agreements allowed the parties to terminate their relationship by mutual agreement.  The provision allows unilateral termination by Defendant FEDEX only "if the other party breaches or fails to perform the contractual obligations imposed by [the Operating Agreements]".

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

24. Furthermore, Section 7 of Addendum 16 of the Operating Agreement states that "[i]f within seven days of receiving notice of an opportunity to cure the breaching Party demonstrably remedies any breach and/or takes steps to ensure that similar breaches will not occur in the future, termination of the Operating Agreement will not be warranted."

25. Also, Section 9.3 of the Operating Agreements provides for arbitration "[i]n the event [Defendant FEDEX] acts to terminate [the] Agreement … and Contractor disagrees with such termination or asserts that the actions of RPS are not authorized under the terms of [the] Agreement."

26. Plaintiffs contend that this Court has jurisdiction over the dispute notwithstanding the arbitration provision, because similar arbitration provisions have been deemed unconscionable and a contract of adhesion, which render this provision unenforceable. See *Openshaw v. FEDEX Ground Package Sys., Inc.,* 731 F. Supp. 2d 987 (C.D. Cal. 2010).

27. Plaintiffs satisfactorily performed all their obligations under the Operating Agreements. Plaintiffs covered eleven geographically expansive routes. Plaintiffs and their drivers enjoyed excellent relationships with their customers, and Defendant FEDEX even commended Plaintiffs for the quality of their services. Plaintiffs abided by the conditions imposed by Defendant FEDEX on the performance of trucking services to the company. Prior to the incidents described

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

in this Complaint, Plaintiffs were never formally cited for any offenses, nor were there any formal findings of any fault, wrongdoing, or non-compliance under the Operating Agreements.  Importantly, Plaintiffs had only been audited a single time in all the years of service by Defendant prior to the acts described below.

28. However, in March, 2015, a new yard manager, Martin Daza, was assigned to the Rialto hub by defendant FEDEX which gives rise this suit.

29. In 2006, Mr. Daza was hired by defendant FEDEX as a "Regional Manager Home Delivery," in Placentia, CA, whereby he was responsible for managing twenty-two, (22), facilities in five western states, which provided residential delivery services.  Attached herein as Exhibit 3, is a true and correct copy of Mr. Daza's resume taken from his website, www.martindaza.com, in September, 2017.

30. On information and belief, Mr. Daza proved his unfitness as a manager of any kind by being named as a party in a lawsuit brought by another FEDEX employee which alleged tortious work related conduct.

31. Rather than fire Mr. Daza, despite his unfitness to manage, defendant FEDEX demoted Mr. Daza such that he became a "Senior Manager," of a single facility, the Rialto terminal, Plaintiffs' home base in March, 2015.  Immediately, Mr. Daza let it be known that he "hated contractors," and began systematically to harass and disrupt their businesses.

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

32. Specifically, initially, Mr. Daza displayed his enmity toward contractors by reversing the previous "open door policy," whereby contractors could communicate with the senior yard manager to find out what was expected of them and they, in turn, could express their operational concerns to him. Mr. Daza further began to restrict the Rialto yard access to contractors, including Plaintiffs, which affected Plaintiffs ability to generate revenue because of the substantial wait times contractor trucks and drivers needed to wait off-site before being offered a pre-loaded trailer to haul. Contractors were not offered additional compensation for the wages paid to their drivers during these lengthy wait times.

33. Instead, Mr. Daza began to favor "outside carriers," (those big rig carriers without contracts), by giving them preferential loads without a substantial wait time. These outside carriers were typically employed during the holidays, when contracted teams were busy and could not handle all of defendant's deliveries. However, upon Mr. Daza's assignment to the Rialto terminal, the outside carrier presence there increased dramatically.

34. On April 23, 2015, Mr. Kalaj on behalf of the Plaintiff companies, along with more than 20 other contractors with operations in Rialto, raised these Daza and contract-related issues with Defendant FEDEX by email. They stated that their mileage compensations were below standard, that there was no compensation for retention/waiting times for loads, (which usually averaged 2 to 6 hours daily for

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

every driver), and that outside carriers were given an unfair advantage over contractors (*e.g.*, shorter wait times, payment of compensation for wait times, most desirable dedicated routes), among others. Attached herein as Exhibit 4, is a true and correct copy of said email.   Their specific complaint about Mr. Daza, as described above, can be found in paragraph 11 of the email.

35. Thereafter, Defendant FEDEX, through Mr. Daza and others, began to embark on systematic audits and termination of the contracts of the involved contactors, including Plaintiffs, in retaliation for their concerns expressed in the April 23, 2016, email.

36. The signatory contractors to the April, 2016, email, were being singled out for the harassing behavior by Mr. Daza, including Mr. Kalaj. His companies were selected for audits, despite exhibiting exemplary work practices over the 22 previous years with defendant FEDEX.

37. Additionally and by pretext, Mr. Daza wrongfully attributed an accident caused by one of Mr. Kalaj's drivers, Allan Burnini, to Plaintiffs, even though the driver was on loan to another contractor, Ramtrans, Inc., and not working for Plaintiffs when an accident occurred in June, 2016. Plaintiffs allege that because Mr. Kalaj relinquished control of his driver while in the employ of another, a special relationship existed between the driver and his temporary employer such that the subsequent employer is fully responsible for his torts, pursuant to *Marsh v.*

*Tilley Steel Co.,* (1980) 26 Cal.App.3d 486, 492. Despite this, Mr. Daza attributed blame for the accident to Mr. Kalaj and Plaintiffs.

38. Further, despite Plaintiffs satisfactory performance, on June 23, 2016, Defendant FEDEX abruptly suspended their contracts on mere accusation – without any concluded inquiry or investigation – that Plaintiffs dispatched single drivers on team runs and allowed (or failed to correct) the inputting of incorrect information into the Electronic Logging Devices (ELDs). Defendant FEDEX excluded Plaintiffs from dispatch/tender of runs and declared them ineligible to provide driving services to the company thus preventing the Plaintiffs to operate at the normal, anticipated profit levels, crippling their ability to retain their drivers and pay the monthly finance charges for their trucks.

39. This immediate suspension of Plaintiffs' entire operation on the "suspicion" that a single driver may only have been driving on a team run, was done in bad faith and in clear breach of the operative paragraphs, listed above, which describe escalating penalties after the contractor has had an opportunity to respond and an investigation has occurred. By contract, termination of agreements doesn't occur until several instances of misconduct have been documented and the contractor is unable to rectify the misconduct.

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP
Attorneys at Law

40. On June 24, 2016, Defendants sent Plaintiffs a "Notice of Opportunity to Cure," which describe the alleged violation regarding the single driver on a team run.  Attached as Exhibit 5, is a true and correct copy of said Notice.

41. Upon receipt of the Notice, Mr. Kalaj attempted to contact other FEDEX managers to determine why Mr. Daza had shut him down.  On June 26, 2016, Mr. Kalaj sent an email to Jim Kappa, Managing Director of Contractor Relations, detailing what happened to his companies.  Attached as Exhibit 6, is a true and correct copy of said email.

42. In the email, Mr. Kalaj details his attempts at getting Mr. Daza to reconsider such a harsh, unwarranted shut down and describes how he has already lost more than $25,000 in revenue with just a few days of lost runs.

43. Mr. Kalaj promptly responded to Defendant FEDEX' Opportunity to Cure, on June 27, 2016, by email.  Attached as Exhibit 7, is a true and correct copy of said response.  In the email, Plaintiffs furnished written assurances to Defendant FEDEX on the following matters: (1) full cooperation in the investigation by providing data and documents; (2) personnel training on ELD Hours of Service compliance; (3) enforcement of measures to ensure that at least two qualified drivers are dispatched for team runs and providing a compliance plan; and (4) guarantee that no personnel who falsified Hours of Service or other records are assigned to provide services.

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

44. Despite the written assurances, Defendant FEDEX, through Mr. Daza, refused to lift Plaintiffs' suspension.  Still without any proof against Plaintiffs and without any concluded inquiry or investigation, whether reasonable or otherwise, Defendant FEDEX continued excluding Plaintiffs from dispatch, citing performance issues and the Alan Burnini accident as a basis for suspension.

45. Eventually, as Defendant FEDEX continually excluded Plaintiffs from dispatch and threatened immediate termination Contrary to Section 7 of Addendum 16 of the Operating Agreement, Plaintiffs were forced to sell their Agreements, (and dedicated lines), by August 31, 2016, under duress. Put another way, if Plaintiffs did not immediately sell off their lines, they were told they would be taken over by defendant FEDEX without any compensation, despite their multi-million dollar value.

46. Further, Mr. Kalaj, on behalf of Plaintiffs, was forced to sign a General Release exonerating the Defendants for their actions herein under the threat that they would immediately terminate their Operating Agreements and not give Plaintiffs time to complete the sale of their lines.  Mr. Kalaj regretfully signed the Release under severe economic duress.

47. Plaintiffs obtained an offer to purchase its lines from another contractor, Rodriguez Carrier, for an amount in excess of $2,600,000, in August, 2016. However, Plaintiffs were not permitted to do so because defendant FEDEX,

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

through Mr. Daza and others, wrongfully and unreasonably refused to allow the purchase when the deal was presented to them for their permission and approval.

48. Plaintiffs were forced to sell their lines at grossly low prices.  The amount of sale was $1,200,000, to Julia, Inc.

49. Incredibly, these wrongful acts were not confined to Plaintiffs and Mr. Kalaj.  Mr. Kalaj had relatives that were also contracted FEDEX linehaulers at the Rialto yard, including David Kalaj, Aldi Ukalj and Joeseph Mazi.   These gentlemen were also signatories to the April 23, 2016, complaint email to defendant FEDEX regarding conditions at the Rialto terminal and the conduct of Mr. Daza.  As further proof of the retaliatory actions of defendant FEDEX and its intent to destroy their businesses, each relative, along with their respective contractor corporations, had their contracts wrongfully and by pretext terminated just as Plaintiffs did.

50. The wrongful and unjustified terminations of Plaintiffs' contracts were the result of the unwarranted enmity against contractors by Senior Yard Manager, Martin Daza, who had the intent to disrupt and destroy their long lasting business relationship and harm them economically.   Defendant FEDEX knew, or by reasonable diligence should have known, that the Mr. Daza's tortious conduct would cause harm to Plaintiffs.

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

51. Alternatively, Mr. Daza was working in the course and scope of his employment with Defendant in doing these wrongful acts to Plaintiffs, who directed or ratified the tortious conduct.

52. On information and belief, Mr. Daza was fired by defendant FEDEX due to his acts as described herein, in December, 2016.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

53. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

54. Each of the Plaintiffs have performed all the acts required of them under their Operating Agreements.

55. Defendant breached the Operating Agreement when they did not comply with the four requirements of Section 1.14 of the Operating Agreements before suspending them. Section 1.14 of each of the Operating Agreements granted Defendant FEDEX discretion to "suspend the Contractor or driver" pending the filing of charges *only*: (1) with respect to acts or omissions specified in said Section (involving safety obligations) that would constitute an offense of law and a ground for termination or disqualification; (2) *after reasonable inquiry*; and (3) upon preliminary determination of the probability that the Contractor or driver is guilty of the offense charged.

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

56. Plaintiffs allege that their operations were suspended despite the fact that: although there was a threatened investigation, 1) there were no charges against them pending with respect to acts or omissions specified in said Section (involving safety obligations) that would constitute an offense of law and a ground for termination or disqualification, and 2) there was no preliminary determination of the probability that either Plaintiffs or their drivers were guilty of the offense charge.

57. Defendant also breached Section 1.14 numbers 15 and 18, which covered its supposed grounds for the termination of Plaintiffs' agreements, since they did not inform Plaintiffs of their first or succeeding offenses nor give Plaintiffs any warning or memorandums before they decided to suspend Plaintiffs' operations and terminate their contract. In fact, Plaintiffs were never charged with any first or previous offenses nor was there any preliminary determination of Plaintiffs' guilt for any first or previous offenses prior to their termination of Plaintiffs' Agreements.

58. Furthermore, Section 9.1 of the Operating Agreements allowed the parties to terminate their relationship by mutual agreement. The provision allows unilateral termination by Defendant FEDEX only "if the other party breaches or fails to perform the contractual obligations imposed by [the Operating Agreements]".

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

59. There was no mutual agreement to terminate the contract/Agreement by the parties.  Furthermore, Plaintiffs had not breached or failed to perform the contractual obligations or conditions imposed under the Agreements

60. Furthermore, Defendant breached Section 7, of Addendum 16, of the Operating Agreement when it threatened termination of Plaintiffs' Agreements despite their response to it within seven days.  Plaintiffs' response explained in detail their remedies for any supposed breach and the steps they took to ensure similar breaches would not occur in the future.

61. Defendants' breach of the Linehaul Operating Agreements has caused Plaintiffs to be permanently harmed in that their ongoing operations have been terminated.  Said operations were generating approximately $6,000,000 in revenue with an average annual profit of 20% of revenue at the time of the breach. Defendants' breach has caused Plaintiffs to lose future revenue in an amount to be proven at trial.

62. Defendants further breach the operative contracts by unreasonably denying Plaintiffs the right to sell their lines in August, 2016, to Rodriguez Carrier, in a sale amount of $2,600,000.  Defendants breach caused financial injury to Plaintiffs in that they ultimately sold the lines for $1,200,000 to Julia, Inc.

63. The Defendant's conduct herein was a substantial factor in causing harm to Plaintiffs.

FIRST AMENDED COMPLAINT FOR DAMAGES

WHEREFORE, Plaintiffs pray for relief as hereinafter provided.

## SECOND CAUSE OF ACTION:
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

64. Plaintiffs re-allege and incorporate by reference the above Factual Allegations as if fully set forth herein.

65. Plaintiffs NCT and KALAJ, INC., entered into linehaul operating agreements with Defendant FEDEX in 2006 and 2014.  In performance of these contracts, Plaintiffs did all, or substantially all of the significant things that the contract required.

66. The Defendant unfairly interfered with Plaintiffs' right to receive benefits under the contracts in the manner described herein. Defendant deprived Plaintiffs of the benefits of the Agreement by, among other things, failing to provide him the promised support under the Agreement, interfering with their ability to run his business smoothly by suspending Plaintiffs' operation and unilaterally terminating the Agreement contrary to its terms.

67. Plaintiffs were harmed by Defendant's conduct in an amount to be proven at trial, but not less than $1,000,000, which represents the natural and direct consequences of the Defendant's  breach.

WHEREFORE, Plaintiffs pray for relief as hereinafter provided.

//

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

### THIRD CAUSE OF ACTION:
### INTENTIONAL INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE

68. Plaintiffs re-allege and incorporate by reference the above Factual Allegations as if fully set forth herein.

69. Plaintiffs and third-party, Rodriguez Carrier, Inc., were in an economic relationship that probably would have resulted in an economic benefit to Plaintiffs when they offered to purchase Plaintiffs' lines for $2,600,000 in August, 2016.

70. Defendant FEDEX knew of the economic relationship because any sale of lines had to be approved by them, and the deal was presented to them for approval.

71. Defendant FEDEX engaged in wrongful conduct by unreasonably denying the sale.

72. By engaging in the wrongful conduct, Defendant FEDEX intended to disrupt the relationship between Plaintiffs and Rodriguez Carrier and knew that the disruption of the relation was certain to occur.

73. The Plaintiffs were harmed by the wrongful conduct because they were forced to sell their lines at substantially below fair market value.

74. The Defendant's conduct was a substantial factor in causing harm to Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as hereinafter provided.

ROY LEGAL GROUP
—By—
Attorneys at Law

FIRST AMENDED COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION:
## NEGLIGENT  INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE

75. Plaintiffs re-allege and incorporate by reference the above Factual Allegations as if fully set forth herein.

76.  Plaintiffs and third-party, Rodriguez Carrier, Inc., were in an economic relationship that probably would have resulted in an economic benefit to Plaintiffs when they offered to purchase Plaintiffs' lines for $2,600,000 in August, 2016.

77. Defendant FEDEX knew of the economic relationship because any sale of lines had to be approved by them, and the deal was presented to them for approval.

78. The Defendant knew or should have known that this relationship would be disrupted if it failed to act with reasonable care.

79. Defendant FEDEX engaged in wrongful conduct by unreasonably denying the sale of Plaintiffs' lines to Rodriguez Carrier.

80. This refusal to allow the sale did disrupt the relationship between Plaintiffs and Rodriguez Carrier.

81. The Plaintiffs were harmed by the wrongful conduct of Defendant.

82. The wrongful conduct was a substantial factor in causing harm to Plaintiffs.

WHEREFORE, Plaintiff s pray for relief as hereinafter provided.

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

*By*

Attorneys at Law

## FIFTH CAUSE OF ACTION:
## NEGLIGENT HIRING, RETENTION AND SUPERVISON

83. Plaintiffs re-allege and incorporate by reference the above Factual Allegations as if fully set forth herein.

84. Defendant FEDEX hired Martin Daza, who became the Senior Manager in charge of the Rialto terminal in March, 2015.

85. Martin Daza was unfit and incompetent to perform the work he was hired for because he "hated contractors," and committed acts against contractors intending to disrupt and terminate their businesses; further, he had been previously sued by other Defendant employees for tortious work related conduct at another location operated by Defendant.

86. Defendant FEDEX knew, or should have known that Mr. Daza was unfit and incompetent in his employment and that this unfitness created a risk to others, because contractors expressed his harassing behavior toward them in the April, 2016, email from the contractors and by other oral and written complaints.

87. This unfitness and incompetence harmed Plaintiffs because they were, in retaliation and by pretext, unfairly terminated from their Linehaul agreements and the sale of their lines to Rodriguez Carrier was wrongfully denied.

88. The Defendant's negligence in hiring, supervising and retaining Martin Daza was a substantial factor in causing Plaintiffs' harm.

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

WHEREFORE, Plaintiffs pray for relief as hereinafter provided.

## SIXTH CAUSE OF ACTION-RESCISSION OF CONTRACT BASED ON ECONOMIC DURESS

89. Plaintiffs re-allege and incorporate by reference the above Factual Allegations as if fully set forth herein.

90.  On August 31, 2016, Plaintiffs and Defendant entered into a contract - a General Release, allowing Plaintiffs to sell their lines and relieving Defendant of any wrongdoing related thereto.  Attached as Exhibit 8, is a true and correct copy of said contract.

91. Plaintiffs seek a rescission of the contract because it was signed under severe economic distress and declaratory relief that it is extinguished.  Cal. Civ. Code §§1688, et. seq.

92. Plaintiffs allege that Defendant used a wrongful act, the bad-faith breach of the linehaul operating agreements, to pressure Plaintiffs into consenting to sign the General Release.

93. Plaintiffs further allege that a reasonable person in the Plaintiffs' same position would have believed that he or she had no reasonable alternative except to consent to the General Release contract.

94. Plaintiffs would not have consented to the General Release contract without the wrongful acts of the Defendant.

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law

95. Plaintiffs assert the right to rescind under "any other statute providing for rescission."  Cal. Civ. Code §1689(b)(7).

WHEREFORE, Plaintiffs pray for relief as hereinafter provided.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.  For Compensatory damages;

2.  For General Damages as to the Fourth and Fifth causes of  action;

3.  For a grant of rescission of the General Release contract and declaratory relief that it is extinguished, pursuant to the sixth cause of action;

4.  Pre-judgment interest;

5.  For attorney fees as allowed by law;

6.  For Costs of suit;

7.  For such other relief as the Court deems just.

JURY DEMANDED.


Dated: October 18, 2017                    **ROY LEGAL GROUP**



_____/s/_____

**FRANK P. AGELLO, ESQ. (204471)**
Attorney for Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES

ROY LEGAL GROUP

Attorneys at Law