1  Raj D. Roy, Esq. (183726)
2  Frank  P. Agello, Esq. (204471)
   ROY LEGAL GROUP
3  8345 Reseda Boulevard, Suite 222
4  Northridge, California 91324
   Telephone: (818) 993-3300
5  Facsimile: (818) 993-4577
6  Email: roylegalgroup@gmail.com
   Attorneys for Plaintiffs
7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10 | KALAJ, INC., a California            | CASE NO.: 5:17-CV-02060-CBM-KK
11 | Corporation; and N&C TRUCKING,      |
   | INC., a California Corporation;      | **PLAINTIFFS' MEMORANDUM IN**
12 |                                      | **OPPOSITION TO DEFENDANT'S**
13 |        Plaintiffs,                   | **MOTION TO DISMISS, [FRCP**
                                          | **12(b)(6)]**
14 |             vs.                      |
15 |                                      | **[FILED CONCURRENTLY WITH**
16 | FEDEX  GROUND  PACKAGE               | **DECLARATION OF NICK KALAJ**
   | SYSEM, INC., a Delaware Corporation  | **IN SUPPORT OF OPPOSITION]**
17 | ; and DOES 1 to 100, Inclusive,      |
18 |                                      |
19 |        Defendants.                   | Hearing Date: January 19, 2018
   |                                      | Time:          2:30 p.m
20 |                                      | Courtroom:     10A, 10th Floor
   |                                      | Judge:         Hon. Josephine L. Staton
21

22

23

24

25

26

27

28

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………..    iii

INTRODUCTION ………………………………………………..    1

STANDARD OF REVIEW ……………………………………    5

ARGUMENT ………………………………………………..    5

    I.     THE BUSINESS COMPULSION RULES RESCINDS
        THE RELEASE ……………………………………..    5

    II.    THERE ARE OTHER BASES TO MAKE THE RELEASE
        UNENFORCEABLE ……………………………………    7

        A.  The Release Lacks Consideration and is Unconscionable
           ………………………………………………………    7

        B.  The Defendant has Unclean Hands ……………………...    12

    III.   PLAINTIFFS HAVE ALLEGED THE ESSENTIAL
        ELEMENTS OF THEIR CLAIMS …………………………    13

CONCLUSION ……………………………………………………    14

CERTIFICATE OF SERVICE ……………………………………    16

ROY LEGAL GROUP

Attorneys at Law

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) …………………………………………………….   13

*Assoc. Gen. Contractors of Cal. V. Cal. State Councile of Carpenters,*  459 U.S.
519, 526 (1983) …………………………………………………………   14

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 570 (2007)……………………………………………… 5, 13

*Coventry v. U.S. Steel Corp.*
856 F.2d 514, 521-522 (3rd Cir. 1988) ……………………………… 11,14

*Estate of Beck*,
414 A. 2d 65 (1980) ……………………………………………………..   9

*Fields v. Dep't of Pub. Safety*
911 F. Supp. 2d 373, 383 (M.D. La. 2012) (Jackson, J.) …………………..  5

*Gonzales v. Kay*
577 F. 3d 600, 603 (5th Cir. 2009) …………………………………….  5

*Gould Elecs., Inc. v. United States*
220 F. 3d 169, 178 (3d Cir. 2000) ……………………………………..  5

*Harris v. Green Tree Fin. Corp.*
183 F. 3d 173, 181 (3d Cir. 1999) ……………………………………..  8

*Hartnett v. Ryan Homes, Inc.*
360 F. Supp. 878 (W.D. Pa. 1973) aff'd, 496. 2D832 (3d Cir. Pa. 1974) ….  7

*Hornstein v. Paramount Pictures*
22 Misc. 2d 996, 1007, 37 N.Y. S. 2d 404, 414-415 (1942) ………………  6

*Litten v. Logan*
220 Pa. Superior Ct. 274, 282 (1971) ……………………………………… 6

ROY LEGAL GROUP

Attorneys at Law

*National Auto Brokers Corp. v. Development Corp*
243 Pa. Super. 101, 364 ..…………………………………………………… 6

*Openshaw v. FedEx Ground Package System, Inc.*
 731 F.Supp.2d 987, 994, (2010)………………………………………….. 10

*Quilloin v. Tenet Health System Phila, Inc.*
673 F. 3d 221, 230 (3d Cir. 2012)……………………………………………8

*Romero v. Allstate Ins. Co*
1F. Supp. 3d, (2014); …………………………………………… 8, 9, 11

*Terraciano v. Department of Transportation*
 753 A.2d 233 (Pa. 2000) ……………………………………………… 12


**<u>Statutes</u>**

18 Pa. C.S.A. §911 ………………………………………………….. 4

49 CFR §385.909 …………………………………………………… 4

49 CFR §385.911 …………………………………………………… 4

49 CFR §386(a)(2) …………………………………………………4

49 CFR §390.11 …………………………………………………... 4

49 CFR §398.6. ………………………………………………… 3

**<u>Rules</u>**

Rule 12(b)(6) ………………………………………………… 5, 15

ROY LEGAL GROUP

Attorneys at Law

# I.  <u>INTRODUCTION</u>

Defendant FedEx has filed this motion in an attempt to dismiss Plaintiffs' lawsuit related to the termination of their Linehaul Contract in 2016.  The Court must rule against the motion because there are bases to rescind or make the General Release unenforceable and Plaintiffs have properly pled the essential elements of their claims sufficient to state their right to relief.

In their motion, Defendant has introduced new evidence stating that Plaintiffs' contract was terminated because, amongst other claims, the Plaintiffs breached their contract with Defendant by engaging in "pervasive and institutionally accepted practice of being paid for team runs with a single driver." *See,* Motion to Dismiss, pg. 2, ll. 11-13.

In response, Plaintiffs' owner, Nick Kalaj, has expanded his beliefs as to why he was retaliated against and dropped a bombshell – Defendant FedEx has a pervasive, companywide practice of aiding and abetting the breaking of Department of Transportation rules and insists that drivers falsify logs to do so. *See,* Kalaj Declaration, attached herein as Exhibit A, ¶¶ 30-47.  This is done by financial threat to Contractors. *Id.*

As to the retaliation, Mr. Kalaj describes the widely known fact that FedEx has been subjected to countrywide lawsuits for the misclassification of their

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

employed drivers as independent contractors and paid out more than $400,000,000 in settlement of these suits to date.[1] *See,* Declaration, ¶7,8.

Mr. Kalaj contends that these lawsuits have affected his business because resulting legislation requires that he can no longer pay his drivers on a "per mile" basis and must give them overtime and proper meal and rest breaks. *See,* Declaration, ¶9. This increase in driver pay has resulted in a loss of profits for himself and other Contractors because Defendant FedEx did not increase the amount they paid for Contractor services. *See,* Declaration, ¶10.

The request for increased compensation, (and grievances against new Rialto hub manger, Martin Daza), resulted in 23 Contractors sending an email to their FedEx bosses in April 2015 asking for a redress of their claims. *See,* Declaration, ¶¶11,12; and Exhibit 4, to the First Amended Complaint, "FAC."

Subsequently, and in retaliation for the request for increased compensation email, Mr. Kalaj and other Contractors were by pretext terminated; other Contractors have filed suits and arbitration claims against Defendant related to these actions. *See,* Declaration, ¶¶13-15.

---

[1] Kimball Norup, *Another FedEx Misclassification Worker Case Settled for $227 million,* Talentwave, (May 9, 2017), http://www.talentwave.com/FedEx-worker-misclassification-case-settled-for-227-million/

ROY LEGAL GROUP

Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

As to the Defendant's claim regarding Plaintiffs' "zombie runs," Mr. Kalaj has described the scheme employed by FedEx to get their packages delivered on time regardless of whether they break DOT rules.

DOT rules mandate that a commercial truck driver cannot drive more than 10 hours in a single day unless given an 8-hour rest break.  49 CFR §398.6.  To deliver packages faster, it is typical that two drivers will be sent on a long haul run of more than 1,000 miles, with one sleeping in the trucks' bunk while the other drives. *See,* Declaration, ¶32.

Because FedEx has a massive amount of packages to deliver and a relatively small amount of Contractors to do so, it insists and instructs drivers to take zombie runs and falsify logbooks.  *See,* Declaration, ¶33.   Defendant FedEx, which employs a point system which grades Contractor performance, gives a point for a successful run and deducts a point for a Contractor declining a run or a driver having an accident.  Contractors who fall below the 87% mark are determined to be poor performers and are subject to having their valuable lines taken or face contract termination.  *See,* Declaration, ¶34.

 If a Contractor refuses to accept a run because it has no available drivers due to DOT rest rules, Defendant FedEx threatens them with a "decline," which negatively affects their performance rating and could lead to severe financial harm. *See,* Declaration, ¶35.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Further, FedEx instructs its drivers to "get second logbook," with compliant entries if stopped by police and even provides them with correction fluid to assist in the falsification of logs. *See,* Declaration, 36-38.

Clearly, this scheme is a criminal enterprise.  Motor carriers are required to adhere to observe driver regulations.  49 CFR §390.11.  To "aid, abet, encourage or require" motor carriers to violate DOT rules constitutes and "Aiding and Abetting Violation," under the rules.  49 CFR §390.11.

Knowingly falsifying driver logs is a violation of DOT rules which can result in civil penalties.  49 CFR §386(a)(2). A continued pattern of abuse constitutes a "pattern of practice of safety violations," and could subject the motor carrier to suspension of its registration and severe monetary penalties.  49 CFR §385.909; 49 CFR §385.911.

Further, these actions could subject the parties to state penalties.  FedEx could be deemed in violation of Pennsylvania's Corrupt Organizations Act because the scheme hides the true cost and success rate of their operations and could affect share price due to increased operational costs and inefficiencies; this constitutes a fraud upon investors.  18 Pa. C.S.A. §911.

Given the description of these activities by Mr. Kalaj, it is inherently unconscionable that Defendant FedEx would create the problem of DOT violations from which they benefit by having packages delivered on time, and then use the

4

same violations as a basis for Plaintiffs contact termination herein.  Such scheme would allow Defendant to benefit from their illegal activity by having Plaintiffs' claims against them precluded due to the General Release.

## II. <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(6), "the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). A motion to dismiss should be granted only if the plaintiff does not plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. At 678 (citing *Twombly*, 550 U.S. at 556); *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009); *Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 383 (M.D. La. 2012) (Jackson, J.).

## III.   <u>ARGUMENT</u>

## I.    <u>THE BUSINESS COMPULSION RULE RESCINDS THE RELEASE</u>

5

1   The business compulsion rule is a form of economic duress which allows the

2   rescission of a contract if the following elements are met:  1) there exists such

3   pressure of circumstances which compels the injured party to involuntarily or

4   against his will execute and agreement which results in economic loss, and 2) the

5   injured party does not have an immediate remedy.  *Litten v. Logan,* 220 Pa.

6   Superior Ct. 274, 282 (1971), citing *Hornstein v. Paramount Pictures,*  22 Misc. 2d

7   996, 1007, 37 N.Y.S.2d 404, 414-415 (1942); *National Auto Brokers Corp. v.

8   Development Corp.,* 243 Pa. Super. 101, 364.

9       Importantly, the Court in *Litten,* states: "no amount of lawyer's advice or

10  business experience could have assisted Plaintiff;" and in footnote 1, the Court

11  continues: "Therefore the cases relied on by Defendant that there can be no duress

12  where the contracting party is free to consult with counsel are not applicable here."

13  *Litten,*  at 382, 392.

14      Plaintiffs contend that they meet the elements of the rule because they

15  involuntarily signed the General Release under the duress of  an active, daily loss

16  of revenue due to the suspension of their contract and the potential for a complete

17  loss in the sale of their valuable lines.  *See,* Declaration, ¶25.

18      Further, Plaintiffs had no immediate remedy at law because at the time of

19  the signing of the Release, Plaintiffs' operations were suspended and they were

experiencing financial damage related to the ongoing operational costs, such as driver pay, truck lease payments, and so forth. *See,* Declaration, ¶18.

Thus, Plaintiffs were not just experiencing a potential future loss, but an ongoing actual loss. Hiring an attorney to file a lawsuit against FedEx at that time would not have given Plaintiff an immediate remedy because injunctive relief would have just preserved the status quo of the suspension and loss of revenue. Further, a lawsuit would have taken months, if not more than a year before Plaintiffs could potentially receive a monetary award. Because Plaintiffs were already "constructively terminated" due to the suspension, they were facing the closure of the business due to failure to earn income to pay operational costs.

Because Pennsylvania recognizes that contracts involuntarily entered into under economic duress can be rescinded, Plaintiffs request that Defendant's Motion to Dismiss be denied.

## II.    THERE ARE OTHER BASES TO MAKE THE RELEASE UNENFORCEABLE

### A. The Release Lacks Consideration and is Unconscionable

Ordinarily, Pennsylvania courts will not inquire into the adequacy of consideration among parties and the mere inadequacy of consideration will not render a contract void. *Harnett v. Ryan Homes, Inc.,* 360 F. Supp. 878(W.D. Pa. 1973) aff'd, 496 F.2D 832 (3d Cir. Pa. 1974.).

ROY LEGAL GROUP

Attorneys at Law

However, in cases of fraud or unconscionability, the courts will inquire as to the adequacy of consideration. *Romero v. Allstate Ins. Co,* 1 F. Supp.3d 319, (2014); *Estate of Beck,* 414 A.2d 65 (1980).

Plaintiff alleges that the General Release herein is unconscionable because it enables Defendant to pursue a retaliatory breach of the Linehaul contract without penalty for civil liability; covers up a criminal scheme which benefited Defendant and put Plaintiffs at risk; imposes conditions, such as time limitations in which to sell his lines that is in breach of the contract; is drafted by Defendant and is one-sided; and that the entire agreement is a breach of the Linehaul Contract which does not require a General Release upon termination of contract. Most importantly, the object of the General Release, Plaintiffs' valuable lines, are owned by Plaintiff and Defendant did not have the right to impose conditions that would have deprived Plaintiffs of their property.

To prove unconscionability under Pennsylvania law, a plaintiff must show that a contract is both procedurally and substantively unconscionable. *Romero,* at 417, *supra,* citing *Quilloin v. Tenet HealthSystem Phila., Inc*., 673 F.3d 221, 230 (3d Cir.2012). "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability." *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 181 (3d Cir.1999).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ROY LEGAL GROUP

Attorneys at Law

A procedurally unconscionable contract bears a lack of meaningful choice in the acceptance.  *Id.*  Such contracts are typically "contracts of adhesion," which are defined as a "standard-form contract prepared by one party, to be signed by the weaker party who adheres to the contract with little choice about its terms." *Romero,* at 418.  Unequal bargaining power is one factor in determining procedural unconscionability, but other factors, such as the "take it or leave it" nature of the standardized form, the parties relative bargaining power and the degree of economic compulsion are also factors. *Id.*

Plaintiffs allege that the General Release meets all of the factors related to procedural unconscionability.  It was a standardized contract prepared by Defendant given to Plaintiffs who were in a weak bargaining position imposed by the Defendant's false deadline and therefore they had no choice but to sign the agreement.  Also, as detailed herein, Plaintiffs were economically compelled to sign the agreement to stem ongoing daily losses and the potential loss of their valuable lines.

Substantive unconscionability refers to whether the terms of the agreement unreasonably favor the party asserting it and/or grossly favor one side to which the other side does not assent.  *Id.*  To establish Substantive unconscionability, plaintiff must show that the contract terms are unreasonably favorable to the drafter and that the other party had no meaningful choice but to accept the terms.

ROY LEGAL GROUP

Attorneys at Law

Under these elements, clearly, the General Release was Substantive unconscionable. Defendant FedEx imposed unreasonable terms by requiring Plaintiffs to sell their lines or lose them completely in a short time period. Plaintiffs had no choice but to accept or face financial disaster. The contract was drafted by Defendant who had the benefit of a waiver of future suits by Plaintiffs based on a requirement that was not warranted under the code.

To underscore how unconscionable the 30-day period was to allow Plaintiffs to sell their lines, by comparison, the Federal Court sitting in the Central District of California has found that the 90-day period imposed by the FedEx Linehaul contract, (the same contract signed herein by Plaintiffs), to file a claim for wrongful termination of their contract, was an unconscionable provision because it did not give Plaintiffs enough time to file the claim. *Openshaw v. FedEx Ground Package System, Inc.,* 731 F.Supp.2d 987, 994, (2010).

Using the same analysis of procedural and substantive unconscionability as herein, the *Openshaw* court opined that the 90-day clause was unconscionable because, under Pennsylvania Statutes of Limitation, Plaintiffs would have four years to file a claim for wrongful termination. *Id.*

Here, Defendant would be hard pressed to cite authority in which they had the right to impose time limitations on Plaintiffs to sell their lines. Defendants, under the contract, had the right to terminate the contract, but not the right to

ROY LEGAL GROUP

Attorneys at Law

deprive the Plaintiffs of their property.  In his declaration, Mr. Kalaj states that he

has known other terminated Contractors who were given up to one-year to sell

their lines.  *See,* Declaration, ¶26.

Accordingly, the question becomes, "what was the consideration of the

Defendant in the General Release?"  Defendant may claim that they had to forbear

a delay in the termination of Plaintiffs, but this is immaterial, given that they had

already suspended Plaintiffs' operations six-weeks prior to the August, 2016,

signing of the release.  Plaintiff was not receiving loads and therefore was not on

their Rialto, California yard.

The reality is that Defendant gave no consideration in the General Release.

The sale of the lines was not theirs to control because they were owned by

Plaintiffs and no contract provision allows them to be taken or sold for Defendant's

benefit.  Therefore, Plaintiffs received *less* than what they already possessed

because the short time limitations caused their lines to be sold at a reduced rate.

*See,* Declaration, ¶¶ 23, 27, 28.

Shortness of time to consider an offer and failure of one party to receive

more in benefit from a contract than what they already possess are important

factors in determining whether a party's willingness to enter into an agreement was

voluntary.  *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 521-522 (3rd Cir. 1988).

ROY LEGAL GROUP

Attorneys at Law

Here, the only reasonable conclusion that can be drawn is that Plaintiffs' signature on the agreement was not voluntary.

Thus, because the General Release lacks consideration and is unconscionable, Plaintiffs request that Defendant's motion to dismiss be denied.

### B.  The Defendant's have Unclean Hands

Because the General Release provides a waiver from Plaintiffs from future lawsuits and Defendant's activities in aiding and abetting the intentional violation of DOT rules are illegal, Defendant has unclean hands and should not be afforded the equitable relief of having this matter dismissed.

The doctrine of unclean hands requires that one seeking equity must act fairly and without fraud or deceit as to the controversy at issue. *Terraciano v. Department of Transportation*, 753 A.2d 233 (Pa. 2000).

The illegal scheme described in the declaration of Mr. Kalaj, whereby Defendant's aid and abet the intentional violation of DOT rules in order to have their packages delivered on time, is clearly a basis for denying equitable relief to Defendant.

Defendant has further, in retaliation against Plaintiffs, breached the Linehaul contract and imposed unreasonable time constraints on Plaintiffs to sell their lines, which caused Plaintiffs significant monetary losses.

ROY LEGAL GROUP

Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

As stated in Defendant's moving papers herein, "Plaintiffs were falsifying driver logs and hours of service as required by the DOT to the detriment of their employees and the driving public." *See,* Motion, pg. 1, ll. 16-18.  Given the exposure of their corrupt practices of aiding and abetting the intentional violation of DOT rules and the falsification of logbooks by Mr. Kalaj, Defendant's assertions about the detriment imposed by Plaintiffs to their employees and the driving public are unfair, fraudulent and deceitful.

Because Defendant's have unclean hands, Plaintiffs ask that this motion to dismiss be denied.

## III.   PLAINTIFFS HAVE ALLEGED THE ESSENTIAL ELEMENTS TO THEIR CLAIMS.

To survive a 12(b)(6) motion, Plaintiff's must now show that their complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), quoting *Twombly, supra,* at 550.  A claim is plausible on its face "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Here, Plaintiffs have pled sufficient facts to their causes of action.  The factual allegations in the FAC are twelve pages long and describe in detail the "who, what, when, where and why," the Plaintiffs causes of action establish

13

ROY LEGAL GROUP

Attorneys at Law

liability of Defendant for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, etc.

The Court will not assume that a plaintiff can prove facts beyond those alleged in the complaint. *Assoc. Gen. Contractors of Cal. V. Cal. State Councile of Carpenters,* 459 U.S. 519, 526 (1983). Given the voluminous factual allegations asserted in the FAC, it is unnecessary to give Defendant notice of the claims against them.

However, given the new allegations about Defendant's corrupt practices by Mr. Kalaj, which was introduced in opposition to evidence or claims brought in Defendant's motion, if the Court deems necessary, Plaintiff will amend the complaint to assert these new facts.

## IV.   <u>CONCLUSION</u>

Even if this Court agrees that there can be no rescission of the General Agreement based on economic duress, valid reasons exist as to why the Release should be deemed unenforceable.   The Release, which was draconian in nature and in breach of the contract, should not be a bar to Plaintiffs justifiable claims because it lacked consideration, was unconscionable and the Defendant has unclean hands.  Should the court find validity in some of Defendant's claims, Plaintiffs request the right to amend the FAC.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ROY LEGAL GROUP

Attorneys at Law

1

2   DATED:  December 29, 2017              Respectfully submitted,

3

4

5

6                              By:   _____/s/_____

7                                    **Frank P. Agello, Esq.**
                                     Attorney for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2017, I caused the foregoing **PLAINTIFF MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS/ EXHIBIT A: DECLARATION OF NICK KALAJ IN SUPPORT OF OPPOSITION**   to be filed with the Clerk of Court via CM/ECF, which will send notice to the following CM/ECF participants.

**Barak J. Babcock**
**David S. Wilson III**
**FedEx Ground Package System, INC.**
**1000 FedEx Drive**
**Moon Township, PA 15108**
**Tel 412.859.5763**
**Fax 901.492.9930**

Executed on December 29, 2017 at Northridge, California

s/Frank P. Agello

Frank P. Agello

ROY LEGAL GROUP

Attorneys at Law

16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS