Raj D. Roy, Esq. (183726)
Frank P. Agello, Esq. (204471)
ROY LEGAL GROUP
8345 Reseda Boulevard, Suite 222
Northridge, California 91324
Telephone: (818) 993-3300
Facsimile: (818) 993-4577
Email: roylegalgroup@gmail.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALAJ, INC., a California Corporation; and N&C TRUCKING, INC., a California Corporation;<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSEM, INC., a Delaware Corporation ; and DOES 1 to 100, Inclusive,<br><br>Defendants. | CASE NO.: 5:17-CV-02060-CBM-KK<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, [FRCP 12(b)(6)]**<br><br>**[FILED CONCURRENTLY WITH DECLARATION OF NICK KALAJ, DAVID KALAJ AND JOSEPH MAZI IN SUPPORT OF OPPOSITION]**<br><br>Hearing Date: April 27, 2018<br>Time: 2:30 p.m<br>Courtroom: 10A, 10th Floor<br>Judge: Hon. Josephine L. Staton |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………..          iv

INTRODUCTION …………………………………………..          1

STANDARD OF REVIEW ……………………………………          2

ARGUMENT …………………………………………………..          3

    I.     PLAINTIFFS' SALES ROUTES ARE OWNED BY THEM AND DEFENDANT FEDEX IS CONTRACTUALLY OBLIGATED TO PROVIDE CONSENT TO THEIR TRANSFER…………………………………………..          3

    II.    THE DEFENDANT'S OBLIGATION TO PROVIDE CONSENT SURVIVES CONTRACT TERMINATION……………………………………………          5

    III.   DEFENDANT WRONGFULLY INDUCED PLAINTIFFS TO SIGN THE GENERAL RELEASE………………………….……          7

    IV.   DEFENDANT'S ACTIONS MAKE THE GENERAL RELEASE VOIDABLE…………………………………………..          11

        A.  The Defendant's Actions were a Fraudulent Inducement/Misrepresentation………………………..…          12

        B.  There was a Unilateral or Mutual Mistake of Law……..          14

    V.    THE RIGHT TO SUE FOR WRONGFUL TERMINATION OF CONTRACT IS AN IMPORTANT RIGHT/THE GENERAL RELEASE IS UNCONSCIONABLE ………………………          15

ROY LEGAL GROUP

Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

VI.   PLAINTIFFS' CLAIMS ARE NOT BARRED BECAUSE THEY WERE REPRESENTED BY AN ATTORNEY………………………………………………   20

VII.   PLAINTIFFS HAVE ALLEGED THE ESSENTIAL ELEMENTS TO THEIR CLAIMS………………………………………………..   22

VIII.   CONCLUSION…………………………………………………   23

CERTIFICATE OF SERVICE ……………………………………………….   24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROY LEGAL GROUP

Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

# TABLE OF AUTHORITIES

## Cases

*Gould Elecs., Inc. v. United States*
220 F. 3d 169, 178 (3d Cir. 2000) ………………………………………. 2

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 570 (2007)…………………………………………………. 2

*Gonzales v. Kay*
577 F. 3d 600, 603 (5th Cir. 2009) ………………………………………. 2

*Fields v. Dep't of Pub. Safety*
911 F. Supp. 2d 373, 383 (M.D. La. 2012) (Jackson, J.) ………………….. 2

*Cal.-Merrill v. Continental Assur. Cor.*
200 Cal.App.2d 663, (4th Dist. 1962)………………………………………. 5

*Conn.-Stern & Co. v. International Harvester*
148 Conn. 527, (1961)………………………………………………………. 5

*Okla.-Wickham v. Belveal*
1963 OK 227, (1963)…………………………………………………….. 5

Nolde Bros. v. Bakery and Confectionary Workers Union
460 U.S. 243 (1977)……………………………………………….......  5, 6

*John Wiley & Sons v. Livingston*
376 U.S. 543, 555, (1964)………………………………….………………. 6

*Litton Fin. Printing Division v. NLRB*
501 U.S. 190 (1991)…………………………………………………………... 6

*Nitterhouse Concrete Prods. V. Glass, Molding, Pottery, Plastics and Allied Union Int'l Workers Union*
2018 U.S. Dist. LEXIS 16820 (M.D. Pa. Feb. 1, 2018)…………………….  6

ROY LEGAL GROUP

Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Shonberger v. Oswell*
530 A.2d 112, 114 (Pa. Super. 1987)…………………………………………   10

*Three Rivers Motors Co. v. Ford Motor Co.*
522 F.2d 885, 892 (3d Cir. 1975)………………………………………...   12

*Kent v. Fair*
140 A.2d 445 (Pa. 1958)…………………………………………………   12

*Mele Construction Co. v. Crown American Corp.*
618 A.2d 956 (Pa. Super. 1992)…………………………………………   12

*Brindle v. West Allegheny Hospital*
594 A.2d 766 (Pa. Super. 1991)…………………………………………   12

*In re Jack Greenburg, Inc.*
240 B.R. 486 (Bankr. E.D. Pa. 1999)……………………………………   12

*Sir R. Ropner & Co. v. Emmons Coal Mining Corp.*
17 F.2d 386 (D. Pa. 1926)………………………………………………..   12

*College Watercolor Group v. William H. Newbauer, Inc.*
468 Pa. 103, (1976)………………………………………………………   12

*Cummings v. HPG Intern, Inc.*
244 R.3d 16 (1st Cir. 2001)………………………………………………   13

*In re Allegheny Intern, Inc.*
954 F. 2d 167 (3d. Cir. 1992)……………………………………………   13

*Step Plan Servs. Inc. v. Koresko*
12 A.3d 401, (Pa. Super. Ct. 2010)……………………………………   14

*Openshaw v. FedEx Ground Package System, Inc.*
731 F.Supp.2d 981, 998 (2010)……………………………….…………..   15, 19

*Romero v. Allstate Ins.*
1 F. Supp. 3d 319 405………………………………………………   15, 16, 18, 20, 21

ROY LEGAL GROUP

Attorneys at Law

v

*Quilloin v. Tenet HealthSystem Phila., Inc.*
673 F.3d 221, 230 (3d Cir. 2012)……………………………………………  15

*Harris v. Green Tree Fin. Corp.*
183 F.3d 173, 181 (3d Cir.1999)…………………………………………  16

*Cronin v. Citifinancial Servs., Inc.*
No. CIV. A. 08-1523, 2008 WL 2944869, at *3 (E.D. Pa. July 25, 2008)….  16

*Harrison v. Cabot Oil & Gas Corp.*
110 A.3d 178, 184-185 (Pa. 2015)………………………………………...  17

*Coventry v. U.S. Steel Corp.*
856 F.2d 514, 521-522 (3rd Cir. 1988)…………………………………  20

*Terraciano v. Department of Transportation*
753 A.2d 233 (Pa. 2000)………………………………………………...  22

Ashcroft v. Iqbal
556 U.S. 662 (2009)……………………………………………………  22

*Assoc. Gen. Contractors of Cal. V. Cal. State Councile of Carpenters*
459 U.S. 519, 526 (1983)……………………………………………...22

**Statutes**

26 U.S. Code §197, (D)(2)(iii)…………………………………………  4

R.P.C. 3.1………..………………………………………………………..  11

**Rules**

Rule 12(b)(6) ……………………………………………………  2

**Secondary Authorities**

Corpus Juris Secundrum, C.J.S., §610, page 46……………………………  5

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

ROY LEGAL GROUP

Attorneys at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pennsylvania Law Encyclopedia, P.L.E. Contracts §85, page 102…………... 12

Am. Jur. 2d, Fraud in the Inducement §209………………………………..13

ROY LEGAL GROUP

Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

# I.  <u>INTRODUCTION</u>

Defendant FedEx has filed this motion in an attempt to dismiss Plaintiffs' second amended complaint related to the termination of their Linehaul Contract in 2016.  The Court must rule against the motion because there are bases that make the General Release a voidable contract and Plaintiffs seeks to have it set aside.  Further, Plaintiffs have properly pled the essential elements of their claims sufficient to state their right to relief.

Defendant FedEx induced Plaintiffs to sign a General Release, waiving their right to sue for wrongful breach of the Linehaul agreement by wrongfully attempting to withhold their contractual consent to the sale and transfer of his independently owned and valuable sales routes.  Further, they alleged that the immediate termination of the Linehaul Agreement would result in the lines "reverting back" to Defendant FedEx, leaving Plaintiffs with nothing.

As explained below, both of Defendant's assertions were wrong. Defendant FedEx was contractually obligated provide consent to the transfer of Plaintiffs' lines because the consent was an "accrued right" of Plaintiffs under the agreement that would have survived the termination of the contract.  Further, there is not a single legal or contractual basis for Defendant's assertion that they would become the owner of the sales routes upon termination of the contract, an intangible business asset of Plaintiffs.

ROY LEGAL GROUP

Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

Thus, because Plaintiffs were wrongfully induced to sign the General Release, there are several bases for making it a voidable contract.  First, Plaintiffs allege that they were fraudulently induced by misrepresentations to sign the release.  Second, and in the alternative, there was a unilateral or mutual mistake of law as to Defendant's obligations to provide consent.  Finally, for procedural and substantive reasons, the General Release is unconscionable.

## II. <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(6), "the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). A motion to dismiss should be granted only if the plaintiff does not plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. At 678 (citing *Twombly*, 550 U.S. at 556); *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009); *Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 383 (M.D. La. 2012) (Jackson, J.).

2

ROY LEGAL GROUP

Attorneys at Law

## III.   ARGUMENT

### I.   PLAINTIFFS' SALES ROUTES ARE OWNED BY THEM AND DEFENDANT FEDEX IS CONTRACTUALLY OBLIGATED TO PROVIDE CONSENT TO THEIR TRANSFER

In their second amended complaint, Plaintiffs allege that prior to their wrongful termination they owned six dedicated sales routes and five unassigned sales routes.  If sold today, the lines would have a fair market value of $3,400,000. [DOCKETT 27], (page 10, lines 20-24).

In a declaration in support of opposition to Defendant's motion, Plaintiffs owner, Nick Kalaj, has provided sample documents showing the sale of the routes and the notice forms needed to be submitted to Defendant FedEx for approval of the sale.  (*See,* Nick Kalaj declaration, Exhibit 1, "Asset Purchase Agreement and Notice of Proposed Assignment or Transfer," to Defendant FedEx, dated August 13, 2016).

These forms were for a proposed sale of his lines to TER Transport that was not approved by FedEx.  They are submitted herein because they are representative of the typical sale and transfer documents used by FedEx contractors.[1]

A review of the asset purchase agreement shows that Defendant FedEx is not named as a party to the sale, nor are they given any monies related to the sale. This purchase is between two distinct businesses for the sale of an intangible

---

[1] Kalaj declaration, ¶4.

3

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

ROY LEGAL GROUP

Attorneys at Law

business asset, the right to be the sole contractor to deliver packages for FedEx over distinct routes.[2]

A review of the Notice of Proposed Assignment or Transfer, along with Exhibit 4, to Plaintiffs' second amended complaint, (FedEx Form CRL-700, "Asset Transfers"), shows that Defendant FedEx is concerned about whether the proposed buyer is capable of delivering packages for it. [DOCKETT 33-1].  The process involves approval by both a FedEx station manager and District manager, who thoroughly vet the proposed assignee. *See,* for example, Exhibit 4, page 4.2.

When Defendant FedEx signed the Linehaul Agreement with Plaintiffs, they accepted the responsibility to provide reasonable consent to the transfer and sale of these lines by contractors. In fact, they imposed a 30-day time limit upon themselves to make a decision once a proposed transfer is submitted to them. Addendum 16 of the Linehaul agreement states:

### 6. Assignment of the Agreement and Transfer of Rights, Obligations and Duties.

Contractor may assign this Agreement or otherwise transfer all of its rights or obligations under the Agreement with the prior written consent of the FedEx Ground, *which consent shall not be unreasonably withheld*, provided that, the Parties acknowledge and agree that, in all instances, the withholding of such consent by FedEx Ground shall not be deemed unreasonable if in the reasonable

---

[2] The Internal Revenue code recognizes these routes as intangible assets obtained by contract.  26 U.S. Code §197, (D)(2)(iii).

4

ROY LEGAL GROUP

Attorneys at Law

discretion of FedEx Ground (A) the assignment or transfer proposed by the Contractor would result in the inability of a contractor to achieve the results contracted for in the Agreement …..

In connection with any such proposed assignment or transfer, the Contractor proposing the assignment shall provide advance notice to FedEx Ground in writing …. FedEx Ground, as soon as practicable, *but no more than 30 days after receipt of such written notice,* will notify the contractor in writing of its consent or lack thereof to any such assignment or transfer.   *See*, Exhibit 2, pages 2.75 and 2.76.

Further, Exhibit 4 to the SAC, the CR:-700 form states:

**Notice of Proposed Assignment or Transfer, CR-030** Note: *FedEx Ground may not unreasonably withhold consent to a proposed transfer or assignment.*  Consent shall be granted unless there is a legitimate belief that an acquiring IC will be unable to achieve the results set for in the particular agreement.  *See*, Exhibit 4, pg. 4.6.

## II.   THE DEFENDANT'S OBLIGATION TO PROVIDE CONSENT SURVIVES CONTRACT TERMINATION

There is a universal rule in this country that when a party terminates a contract at his option, he is not liable after termination for further transactions thereunder, but obligations that have already accrued are not affected.  *Corpus Juris Secundum,* C.J.S., §610, page 46; *citing,* Cal.-*Merrill v. Continental Assur. Cor.,* 200 Cal.App. 2d 663, (4th Dist. 1962); Conn.-*Stern & Co. v. International Harvester,* 148 Conn. 527, (1961); Okla.-*Wickham v. Belveal,* 1963 OK 227, (1963).

The Supreme Court has ruled on the issue as it relates to a right to arbitrate disputes under a terminated collective bargaining agreement, *Nolde Bros. v. Bakery*

*and Confectionary Workers Union,* 460 U.S. 243, (1977), "the parties obligations under the arbitration clause survive contract termination when the dispute was over the obligation created by the agreement." *Nolde,* at 252, *citing, John Wiley & Sons v. Livingston,* 376 U.S. 543, 555, (1964).   *See also, Litton Fin. Printing Division v. NLRB,* 501 U.S. 190 (1991), "contractual obligations will cease in the ordinary course upon termination ...Rights which accrued under the agreement will survive its termination." *Litton,* at 196.

This contractual rule as stated in the *Litton* case has been adopted in Pennsylvania.  *Nitterhouse Concrete Prods. v. Glass, Molding, Pottery, Plastics and Allied Union Int'l Workers Union,* 2018 U.S. Dist. LEXIS 16820 (M.D. Pa. Feb. 1, 2018) "There are certain types of rights and duties that are presumed to survive the expiration of a contract, even without express language to that effect. For example, rights that have vested or accrued ..." *Nitterhouse,* at *54, *citing, Litton,* 501 U.S. at 207.

Plaintiffs contends that the obligation of Defendant to consent to a proposed transfer after termination of the Linehaul Agreement is an accrued or earned right under the contract. As with all transfers, Plaintiffs were thoroughly vetted and then awarded the lines by FedEx.  Plaintiffs worked these lines during the more than 20 years working for Defendant, delivering packages and earning revenue for FedEx. The lines themselves are valuable, with a fair market value today in excess of

$3,000,000. Importantly, Defendant contractually took on the obligation to give reasonable consent to the proposed transfer of the lines, with no contractual language limiting their obligation to perform due to a contract termination.

Any interference with the sale of these routes, therefore, would be a breach of the contract. By way of analogy, the sales routes are akin to a share of stock in a corporation. The corporation may make money from the initial sale, but they may not thereafter interfere with the sale of that share on a secondary market, like the New York Stock Exchange.

## III.   DEFENDANT WRONGFULLY INDUCED PLAINTIFFS TO SIGN THE GENERAL RELEASE

Despite their obligation to provide consent to a proposed transfer after termination of the Linehaul Agreement, Defendant wrongfully intimidated Plaintiffs' owner Nick Kalaj and his attorney, Byron Husted, Esq., into believing a termination of the agreement would result in a loss of their lines.

Plaintiffs contend that this was an elaborate scheme to induce Plaintiffs to sign the General Release, giving up Plaintiffs' ability to later sue for a wrongful breach of the Linehaul Agreement.

In an August 11, 2016, letter to Plaintiffs' attorney Byron Husted, FedEx attorney Jeffery D. Truitt illustrated their plan. Mr. Truitt stated:

> FedEx Ground is amenable to considering its consent to the proposed assignments and *to forbear from immediate termination of*

7

> *the Operating Agreement*, subject to the satisfaction of certain conditions, including a *general release and waiver* by NCI, KAI, and Mr. Kalaj.
>
> If all conditions are not satisfied by the end of business on August 31, FedEx Ground will not be in a position to consent to the proposed assignments. *See,* [DOCKETT 34-1] Exhibit 12 to the SAC, page 12.5

The Defendant's intent is clear from the letter -  sign a General Release or FedEx will not consent to a proposed transfer of your lines.  The letter further demonstrates the severe time constraints imposed upon Plaintiffs, a mere twenty-days from August 11th to the 31st.  This constraint forced Mr. Kalaj to sell his valuable lines for far less than full market value; he believes that needed at least three months to get full value.[3]

Suffering from severe financial losses due to the suspension of his business prior to termination and faced with the prospect of getting no money from the sale of the lines, Mr. Kalaj did sign the General Release on August 31, 2016.  As further evidence of Defendant's scheme, the Release states:

> **D.** FedEx Ground, NCI and Kalaj agreed that, in exchange for NCI and Kalaj *executing this release* and satisfying other conditions, FedEx Ground will forbear from immediately terminating the Operating Agreement *and from withholding consent to NCI's proposed Assignment* of its Operating Agreement upon satisfaction of certain conditions. *See*, Exhibit 13, page 13.1.

---

[3] Kalaj Declaration, ¶ 9.

ROY LEGAL GROUP

Attorneys at Law

Even today, FedEx and their attorneys believe they acted appropriately and that, incredibly, the lines would have become FedEx lines immediately upon termination of the contract.  In his Reply Brief in his Motion to Dismiss Plaintiffs' First Amended Complaint, Defense Counsel states:

> Plaintiffs' opposition overlooks that if FedEx immediately terminated their agreements pursuant to Addendum 16, section 7, the proprietary interests under the agreements (i.e., the linehaul routes) would immediately *revert to FedEx*.  [DOCKETT 22] (Page 4, lines 15-17)

This is absolutely untrue.  The problem with Counsel's statement is that the referenced section, Addendum 16, section 7, does not contain contractual language that would allow FedEx to own Plaintiffs' routes after termination.  The section, (which is too large to be copied here), is entitled "Grounds for Termination of the Agreement and Opportunity to Cure."   It deals with how a contract can be terminated due to a breach and the potential for curing breaches.

Fundamentally, Defendant is inappropriately attempting to make Plaintiffs and this Court believe that a termination of the Linehaul Agreement equals a termination of contractor owned sales routes.  This is a falsehood because the sales routes are only considered a part of the Linehaul Agreement when they are transferred and sold.

Addendum 20 to the Linehaul Agreement states:

ROY LEGAL GROUP

Attorneys at Law

9

**9.2 Contractor Assigns This Agreement**. If, pursuant to the applicable provisions of this Agreement, *Contractor assigns this Agreement to another entity,* FedEx Ground agrees that any AR, (Assigned Run), and/or URP, (Unassigned Run Position), held under the Agreement, together with any points credited to the associated tractor IDs, *will be transferred and made part of the assignee's agreement …. See*, [DOCKETT 28-1], Exhibit 2, pg. 2.94

Thus, Defendant FedEx had no right to interfere with the sale of Plaintiffs routes, even post contract termination, in the same way that they could not have interfered with the sale of Plaintiffs other assets, like big rig trucks, computers, office furniture or an intangible asset such as goodwill.

To have independently owned contractor sales routes terminated and "revert back" to Defendant FedEx would constitute a criminal and tortious interference with a Contractor's business assets. It is akin to a corporation suddenly claiming that its shares, owned by their own employees through a profit sharing plan, somehow "revert back" to them once the employee is terminated.  The Defendant's claims not only are unfounded under the contract, they violate basic laws related to ownership and the interference in the use of one's property.

Under Pennsylvania law, Conversion is defined as someone who deprives or interferes with another's right or possession of property without the owner's consent and without lawful justification, *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. 1987).  That would certainly happen here if Defendant had tried to have Plaintiffs' $3,000,000 lines "revert back" to them.  Further, the failure of FedEx to

ROY LEGAL GROUP

Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

provide consent could be considered an unlawful interference the use and possession of Plaintiffs' lines.

It is easy to imagine that Defendant FedEx could simply terminate Contractors at will and reap a substantial windfall by reselling the lines under their scheme.  Clearly though, Defendant's actions have deprived Plaintiffs of their ability to have their grievances about the termination of their contract heard in a court of law.  Like the worker's in the collective bargaining agreements described above, Plaintiffs are justifiably attempting to get their grievances heard post contract termination.

## IV.   <u>DEFENDANT'S ACTIONS MAKE THE GENERAL RELEASE VOIDABLE</u>

In Pennsylvania, and elsewhere, an attorney shall only make "meritorious claims and contentions," that have a basis in law and are not frivolous.  R.P.C. 3.1. Because of this rule, attorneys are presumed to know the law and may not ethically make frivolous claims, even when dealing with third-parties.

As a result, the misrepresentations from Defense counsel Truitt and the actions of Defendant managers, such as Martin Daza, can be characterized as intentional misrepresentations or mistakes of law.  Their actions resulted in a General Release that is unconscionable.

Pennsylvania law is settled that "a signed release is binding upon the parties

ROY LEGAL GROUP

Attorneys at Law

unless executed and procured by *fraud*, duress, accident, or *mutual mistake*."

*Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir. 1975)

(citing *Kent v. Fair*, 140 A.2d 445 (Pa. 1958)).

    A. <u>The Defendant's Actions were a Fraudulent Inducement/Misrepresentation</u>

    A fraudulent misrepresentation is defined as: 1) a misrepresentation; 2) an

utterance of the misrepresentation by the defendant; 3) an intention by the

defendant to induce plaintiff to act upon the misrepresentation; 4) justifiable

reliance by the plaintiff upon the misrepresentation; and 5) damages to the plaintiff

based on their reliance on the misrepresentation.  *Mele Construction Co. v. Crown*

*American Corp.,* 618 A.2d 956 (Pa. Super. 1992); *Brindle v. West Allegheny*

*Hospital,* 594 A.2d 766 (Pa. Super. 1991).  The fraud is proven when it is shown

that a false representation was made knowingly, or in conscious disregard of the

truth, or recklessly without caring whether it is true or false.  *In re Jack Greenburg,*

*Inc.,* 240 B.R. 486 (Bankr. E.D. Pa. 1999)

    When a party demonstrates that they were induced to execute a contract

through fraud and misrepresentations affecting the subject matter, the contract may

be avoided by the party injured by reliance thereon.  *Pennsylvania Law*

*Encyclopedia,* P.L.E. Contracts § 85, page 102; *Sir R. Ropner & Co. v. Emmons*

*Coal Mining Corp.,*  17 F.2d 386 (D. Pa. 1926); *College Watercolor Group v.*

*William H. Newbauer, Inc.,* 468 Pa. 103, (1976).

A party cannot induce a contract by fraudulent misrepresentations and then use contractual devices to escape liability. *Am. Jur. 2d,* Fraud in the Inducement, §209; *Cummings v. HPG Intern, Inc.,* 244 F.3d 16 (1st Cir. 2001).  Inducing another to enter into a contract by means of fraud or misrepresentations, when the other party had no duty to enter into the contract, is a key element of a claim for fraudulent inducement.  *In re Allegheny Intern, Inc.,* 954 F.2d 167 (3d. Cir. 1992).

Being presumed to know the law, (and the language contained in their own contracts), the actions by FedEx lawyers to deprive Plaintiffs of their right to sue for wrongful termination of the contract can be characterized as a fraudulent inducement by misrepresentations.  Their statements about their ability to breach the contract by withholding consent to the proposed sales of Plaintiffs' lines was a knowingly false utterance that was justifiably relied upon to Plaintiffs' detriment. Plaintiffs have been damaged in the millions of dollars in lost profit and from the sale of their lines at deflated prices.

Although Defendant had a right to terminate the contract based on their belief that there was a material breach by Plaintiffs, Plaintiffs were under no obligation to sign a General Release upon termination.  Given the Defendant's obligation to give consent after a contract termination, as described above, it cannot be said that the signing of the Release was a negotiated benefit procured by Plaintiffs.

ROY LEGAL GROUP

Attorneys at Law

B. <u>There was a Unilateral or Mutual Mistake of Law</u>

A mutual mistake of fact serves as a defense to contract formation and occurs when: 1) at the time of contract formation; 2) both parties made a mistake as to a basic assumption upon which the contract was formed; 3) the mistake has a material effect upon the agreed upon exchange of performances; and 4) the mistake is not one to which the party seeking relief bears the risk. *See Step Plan Servs. Inc. v. Koresko,* 12 A.3d 401, (Pa. Super. Ct. 2010). One of the remedies for mutual mistake is the avoidance of the injured party's contractual obligations. *Id.*, at 410.

A mistake of law, coupled with misrepresentations, is a ground for avoiding a contract. *Estate of Potter,* 6 Pa. Super 627 (1898).

Here, it can be said that the mistake of law regarding Defendant's ability to not give consent to the proposed sale of lines and whether the lines would "revert back" to Defendant upon termination of the contract was a unilateral mistake, (known by Defense attorney Truitt, but not by Plaintiff attorney Husted), or a mutual mistake by both parties and attorneys. Regardless, the mistake of law occurred at the time of the contract formation and had a material effect on the performances of the parties.

Plaintiffs would not have signed the General Release if they were not forced to because of the mistaken belief that Defendant's assertions were lawful. Plaintiffs' owner, Mr. Kalaj, has stated that both he and his attorney were ignorant

14

of the fact that Defendant's assertions regarding their ability to withhold consent and the reversion of the lines were unlawful at the time he signed the General Release.[4]

## V.   THE RIGHT TO SUE FOR WRONGFUL TERMINATION OF CONTRACT IS AN IMPORTANT RIGHT/ THE GENERAL RELEASE IS UNCONSICIONABLE

The Linehaul Agreement contains an arbitration provision which requires Contractors to submit claims for wrongful termination within 90-days of termination.  However, the Courts have struck down this provision in favor of the four-year Pennsylvania statutes of limitations because it is an important right. *Openshaw v. FedEx Ground Package System, Inc.,* 731 F.Supp.2d  981, 998 (2010).

In *Openshaw,*  the court found that the arbitration provision was both procedurally and substantively unconscionable because it was unreasonably favorable to FedEx and unacceptably detrimental to Mr. Openshaw, a FedEx contractor like Plaintiffs herein.  *Id.,*  at 990.

To prove unconscionability under Pennsylvania law, a plaintiff must show that a contract is both procedurally and substantively unconscionable. *Romero v. Allstate Ins., 1 F. Supp. 3d 319, 405,* at 417, *supra,* citing *Quilloin v. Tenet*

---

[4] Kalaj Declaration, ¶ 11.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

*HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir.2012). "The party challenging

a contract provision as unconscionable generally bears the burden of proving

unconscionability." *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 181 (3d

Cir.1999).

To decide whether a provision is procedurally unconscionable, "courts must

consider … factors including the 'take it or leave it nature of the standardized form

of the document, the parties' relative bargaining positions, and the degree of

economic compulsion motivating the adhering party." *Romero,* at 418.  A party

may show substantive unconscionability by showing that the "contract terms are

unreasonably favorable to the drafter and that the other party had no meaningful

choice but to accept those terms." *Id.*(quoting *Cronin v. Citifinancial Servs., Inc.*

No. CIV. A. 08-1523, 2008 WL 2944869, at *3 (E.D. Pa. July 25, 2008).

As a preliminary matter, it is clear that Plaintiffs received much less from

signing the General Release than what they had before.  Prior to the release,

Plaintiffs had: 1) the right to sell their lines, unfettered by time constraints and for

full value, with the obligation of Defendant to provide consent to a proposed

transfer even after termination of the Linehaul Agreement; and 2) the right to sue

for wrongful termination of the contract.  After the signing of the General Release,

Plaintiffs had: 1) a loss in the sale of the lines at less than full value due to

Defendant's wrongful threat to withhold consent and that the lines would "revert

16

back" to them if not sold under severe time constraints; and 2) no right to sue for wrongful termination of the contract.

Given that the Plaintiffs were induced to sign the Release based on fraud, a unilateral or mutual mistake of the law, or even an "anticipatory breach" by Defendant to withhold consent, it is clear that the Release is both procedurally and substantively unconscionable. An anticipatory breach in contract is one where the other party manifests an absolute and unequivocal refusal to perform. *Harrison v. Cabot Oil & Gas Corp.,* 110 A.3d 178, 184-185 (Pa. 2015)

Defense counsel Truitt's claim, in his August, 2016, letter that FedEx will not give consent to the sale of lines unless Plaintiffs sign a General Release, was an economic threat to commit a tort. A "threat" is improper if the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient of the threat. *Restatement, Second, Contracts* §176(2). Under Pennsylvania law, a "Breach of the Covenant of Good Fair Dealing" is an intent to injure or interfere with the right of another party to a contract; it is subsumed under a breach of contract claim and must be tied to a specific provision in the contract. *Diodato v. Wells Fargo Ins. Servs., USA,* 44 F.Supp. 3d, 560 (M.D. Pa. 2014), (interpreting Pennsylvania law). Here, Plaintiffs allege Defendant breached provision 6, (detailed above), of the Linehaul Agreement by failing to provide consent to the sale of its lines.

17

ROY LEGAL GROUP

Attorneys at Law

Thus, paragraph D of the General Release, (copied above), is procedurally unconscionable because it required Plaintiffs to sign the General Release in exchange for Defendant not immediately terminating the contract and withholding consent to the assignment of Plaintiffs' lines.  It was a "take it or leave it proposition," thrust upon a party with an unequal bargaining position who was under a severe economic threat by Defendant to commit a tort or anticipatory breach of the contract.  It is procedurally unconscionable because Plaintiffs were presented with the Release with no choice but to accept the document as written or reject it in its entirety and face financial ruin.  *Todd Heller, Inc. v. United Parcel Serv., Inc.* 754 A.2d 689, 700 (Pa. Super 2000).

Such contracts are typically "contracts of adhesion," which are defined as a "standard-form contract prepared by one party, to be signed by the weaker party who adheres to the contract with little choice about its terms."  *Romero,* at 418.

Substantive unconscionability can be shown when the contract provision unreasonably favors the party with the greater bargaining power.  *Witmer v. Exxon Corp.,* 495 Pa. 540 (1981).  Here, paragraph D of the General Release unreasonably favors FedEx, who had the greater bargaining power.

Plaintiffs have alleged in their second amended complaint that Defendant FedEx also materially breached the Linehaul Agreement by "aiding and abetting" the violation of DOT laws. *See,* ¶¶ 42-44 of  Plaintiffs SAC.   Because Plaintiffs

18

ROY LEGAL GROUP

Attorneys at Law

made significant yearly profits from their contractor operations and because their lines were sold at a significant discount, Plaintiffs claims are potentially worth millions of dollars. The General Release therefore greatly favors the Defendant, who induced Plaintiffs to enter into the agreement based on the wrongful withholding of an key obligation to provide consent after termination and a mistaken assertion that the lines would revert back to them.

Because of the procedurally and substantively unconscionability of the General Release, it must be deemed voidable and Plaintiffs seek to have it set aside.

If the Release were allowed to stand, there would be a wholesale deprivation of contractor rights to sue for wrongful breach of contract, which would be contrary to the principles espoused in the *Openshaw* rulings.  Stung by the *Openshaw* ruling  which struck down the 90-day arbitration provision, Defendants have devised this new scheme to rid contractors of their rights to sue altogether.

Plaintiffs have attached as Exhibits to their SAC, documents from other contractors, (Joseph Mazi and David Kalaj), showing that FedEx is using this scheme to deprive others of their rights by making the same wrongful claims about their ability to withhold consent and the reversion of the lines back to them.  *See,* [DOCKETT 35-3 Mazi], (Exhibit 15 to the SAC);  [DOCKETT 35-2 Kalaj] (Exhibit 14 to the SAC).  Joseph Mazi was threatened in the same manner as

19

Plaintiff, as evidenced by the December, 2016, termination letter from manager Martin Daza.  David Kalaj was also threatened and was forced to sign the same General Release as Plaintiffs on November 14, 2016.

## VI.   **PLAINTIFFS' CLAIMS ARE NOT BARRED BECAUSE THEY WERE REPRESENTED BY AN ATTORNEY**

In his motion to dismiss the SAC, defense counsel claims that Plaintiffs are precluded from asserting the doctrine of unconscionability because they were represented by an attorney. [DOCKETT 41-1] (Page 3, lines 4-12).

This is untrue.  Although Plaintiffs were represented by an attorney when signing the release, it is one of several factors in deciding whether a contract is unconscionable.   Under a "totality of circumstances test," the court can look at several factors to determine whether a General Release was knowingly and voluntarily signed in an unconscionability test.  *Romero v. Allstate Ins.,* 1 F. Supp. 3d 319, 405, *Citing, Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 522-523.

These other factors include: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the

20

agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law. *Id.*

Under this totality test, given that the Defendant implacably insisted on breaching the contract by refusing to provide consent, it cannot be said that a material negotiation took place regarding the terms of the Release, (factor 6), which was done under severe time pressure, (factor 3).  Most importantly, Plaintiffs and their attorney did not know their rights before signing the release, (factor 4).  Because of this, and despite the Plaintiffs being represented by an attorney, the General Release should be deemed voidable.

Pointedly, in *Romero,* the court considered that the Plaintiffs therein were represented by an attorney and still denied the Defendants' motions for summary judgment related to the Releases, based on the totality test.  *Id.,* at 432.  It is clear that the authority presented by Defense counsel does not support the proposition that parties seeking to deem a contract unconscionable are barred if they are represented by an attorney.

Significantly, as to Plaintiffs others bases to make the Release voidable based on Fraudulent Inducement or Mutual Mistake of Law, or both, there appears to be no authority barring those claims because one party was represented by an attorney.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT

## VII.   PLAINTIFFS HAVE ALLEGED THE ESSENTIAL ELEMENTS TO THEIR CLAIMS.

To survive a 12(b)(6) motion, Plaintiff's must now show that their complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), quoting *Twombly, supra,* at 550.  A claim is plausible on its face "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Here, Plaintiffs have pled sufficient facts to their causes of action.  The factual allegations in the SAC are seventeen pages long and describe in detail the "who, what, when, where and why," the Plaintiffs causes of action establish liability of Defendant for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, etc.  Plaintiffs have taken particular care to include contract provisions which indicate that the Defendant had an obligation to provide consent, (¶¶ 17-20), and how Defendant breached the agreement and induced them to sign the General Release.  ¶¶ 54-62.

The Court will not assume that a plaintiff can prove facts beyond those alleged in the complaint.  *Assoc. Gen. Contractors of Cal. V. Cal. State Councile of Carpenters,*  459 U.S. 519, 526 (1983).  Given the voluminous factual allegations

ROY LEGAL GROUP

Attorneys at Law

asserted in the SAC,  Defendant has been given adequate notice of the claims

against them.

However, if the Court deems necessary, Plaintiff will amend the complaint

to assert these new facts.

## IV.    **CONCLUSION**

The attempt by Defendant FedEx to deprive Plaintiffs of their right to sue for

wrongful breach of contract based on an unlawful threat to withhold consent is a

wholesale attempt by Defendant to deprive Plaintiffs and other contractors of their

rights under the Linehaul Agreement.  It needs to be stopped now.  Plaintiffs are

requesting that this court deny the motion to dismiss because the General Release

is a voidable contract because Plaintiffs were forced to enter into it through

fraudulent inducement or by mutual mistake.  Finally, the General Release is

unconscionable because it greatly favors the defendant and is an unacceptable

detriment to Plaintiffs. Each of these bases, taken together or individually, warrant

the determination that the General Release is voidable.

DATED:  April 6, 2018                    Respectfully submitted,


By:   _____/s/_____
      **Frank P. Agello, Esq.**
      Attorney for Plaintiff

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2018, I caused the foregoing **PLAINTIFFS' MEMORANDUM IN IN OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; EXHIBIT A: DECLARATION OF NICK KALAJ IN SUPPORT OF OPPOSITION; EXHIBIT B: DECLARATION OF DAVID KALAJ IN SUPPORTOF OPPOSITION; EXHIBIT C: DECLARATION OF JOSEPH MAZI IN SUPPORT OF OPPOSITION,** to be filed with the Clerk of Court via CM/ECF, which will send notice to the following CM/ECF participants.

**Barak J. Babcock**
**David S. Wilson III**
**FedEx Ground Package System, INC.**
**1000 FedEx Drive**
**Moon Township, PA 15108**
**Tel 412.859.5763**
**Fax 901.492.9930**

Executed on April 6, 2018, at Northridge, California

<u>s/Frank P. Agello</u>

Frank P. Agello

ROY LEGAL GROUP

Attorneys at Law

24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINIT